UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ANDREA MATHIS, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>    Defendant. ) | CAUSE NO.: 2:04-CV-378-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 4], filed by the Plaintiff, Andrea Mathis, on September 20, 2004, and on the Social Security Opening Brief of Plaintiff [DE 15], filed by the Plaintiff on January 6, 2005. The Plaintiff seeks judicial review of a final decision of the Defendant, Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner"), by which the Plaintiff was denied Social Security Disability Income Benefits ("DIB") under Title II of the Social Security Act. The Plaintiff seeks review pursuant to 42 U.S.C. § 405(g). For the following reasons, the Court denies the Plaintiff's request to reverse and remand the decision of the Commissioner.

**PROCEDURAL BACKGROUND**

On July 9, 2002, the Plaintiff filed an application for DIB, alleging disability since June 26, 2000. Her application was denied initially and upon reconsideration. On April 5, 2004, the Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). On October 1, 2003, an administrative hearing was held, at which the Plaintiff, represented by her attorney, testified along with a medical expert and a vocational expert before ALJ Robert Asbille. The ALJ denied the Plaintiff's claim for disability benefits in a decision dated February 23, 2004, which included the following findings:

(1) The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act.

(2) A review of the claimant's earnings record reveals the claimant's income upon which Social Security taxes were paid earned sufficient quarters of coverage to remain insured on the alleged disability onset date, and continues to meet those requirements at least through September 30, 2005.

(3) The earnings record establishes that the claimant has not engaged in disqualifying substantial gainful activity during the period relevant to this decision.

(4) The medical evidence establishes that the claimant has disorders of the back, discogenic and degenerative. These medically determinable impairments cause significant limitations in the claimant's work related functioning and are, therefore, severe within the meaning of the Regulations.

(5) These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

(6) The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

(7) The evidence supports a finding that the claimant retains the maximum residual functional capacity for sedentary exertion. She can lift and carry no more than ten pounds occasionally and 5-8 pounds frequently. She can stand and walk for at least two hours in an eight hour workday. She requires a sit/stand option with about fifteen minutes of standing. She needs to be able to shift in her seat. Posturally, she can occasionally bend. She should never crawl or crouch. She should never climb ladders, ropes, or scaffolds. She should avoid all exposure to unprotected heights and moving machinery. Mentally, she can only perform simple routine tasks.

(8) The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

(9) Born [in] []1964, the claimant is currently thirty-nine years of age. This is defined in the regulations as a younger individual between the ages of 18 and 44 (20 CFR § 404.1563). She has a high school (or high school equivalent) education and has transferable skills from semi-skilled work previously performed. However, because of her mental impairment she cannot perform any transferable work.

(10) Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a bench worker with 5,000 jobs available regionally; a packer, with 1,500 jobs available regionally; and

>an inspector, with 1,200 jobs available regionally. Therefore, there are a significant number of jobs which claimant can perform in the regional and national economy.
>
>(11) The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

R. at 25-26. The ALJ's decision became the final Agency decision when the Appeals Council denied review.

The Plaintiff timely filed her Complaint with this Court, seeking review of the final decision pursuant to 42 U.S.C. § 405(g). On January 6, 2005, the Plaintiff filed her Social Security Opening Brief, alleging that the ALJ's decision was not supported by substantial evidence. On March 18, 2005, the Commissioner filed Defendant's Memorandum in Support of Commissioner's Decision, arguing that the ALJ's decision was supported by substantial evidence. On March 28, 2005, the Plaintiff filed a Social Security Reply Brief of Plaintiff, reiterating her arguments that the ALJ's decision is not supported by substantial evidence.

Both parties have consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Background

The Plaintiff was born in 1964 and was 39 years old at the time of the ALJ's decision. The Plaintiff has a high school education and relevant past work experience as an events coordinator, accounting assistant, change attendant and cashier. The Plaintiff has not engaged in disqualifying substantial gainful activity since the alleged disability onset date of June 26, 2000.

## B.  Medical Evidence[1]

The Plaintiff has a history of back pain, dating back fifteen years or more which has progressively gotten worse over the years. On June 26, 2000, the Plaintiff was admitted to the hospital after complaining of severe abdominal and lower back pain. A magnetic resonance imaging (MRI) scan showed some degeneration in the Plaintiff's lumbar spine with disc bulging. A lumbar spine computerized tomography (CT) scan revealed a small disc herniation and diffuse disc bulging On examination, she had no neurological deficits and minimal tenderness to lumbar palpation. The Plaintiff was given an epidural and experienced a significant improvement in pain. Upon discharge, the Plaintiff was referred to Dr. Oni, an orthopaedic surgeon. Dr. Oni stated that the Plaintiff should follow-up with conservative treatment, including wearing a lumbar corset and attending physical therapy.

From July 11, 2000, to August 11, 2000, the Plaintiff participated in physical therapy for her back. After less than one week, the Plaintiff stated that her back felt a lot better and also noted that her back brace helped a lot as well. She also reported that she had started moving around the house and doing light housework. On July 24, 2000, the Plaintiff stated that she had no pain when she was wearing her back brace. On July 28, 2000, the Plaintiff complained of increased pain because she had sat for four hours at her son's sporting event and had done laundry. Overall, the notes show that the Plaintiff's complaints of pain decreased, and her mobility increased. On July 31, 2000, Dr. Oni administered a second epidural block as the Plaintiff continued to report pain. The Plaintiff then began another course of physical therapy on August 15, 2000.

---

[1] In the Plaintiff's opening brief, she argues only that her back condition is disabling; thereby waiving any challenges to the ALJ's consideration of her cardiac, mental, or any other condition. The Court therefore limits its review to the medical evidence relating to the Plaintiff's back condition.

On September 26, 2000, Dr. Alexander Miller examined the Plaintiff, in response to her complaints of intermittent low back pain aggravated by prolonged sitting, standing and bending. The Plaintiff stated that she had experienced back pain for "years." The Plaintiff stated that Dr. Oni prescribed a back brace which she wore "all the time." However, Dr. Miller noted that the Plaintiff was not wearing it the day of the examination. The Plaintiff admitted that she smoked four-to-five cigarettes daily. The Plaintiff had straight leg raising to ninety degrees and exhibited no gross sensory or motor deficits. The Plaintiff was able to toe and heel walk and reported some mild lumbar tenderness. On range of motion testing, she stated that she was "scared" to flex further. Dr. Miller suggested conservative treatment, including medication and strengthening exercise.

On January 25, 2001, the Plaintiff complained to Dr. Miller of an exacerbation of her back pain. Her straight leg raising was unremarkable, and she could walk on her heels and toes, although her gait remained guarded. Dr. Miller again recommended conservative treatment.

On January 30, 2001, Dr. Linda Stewart examined the Plaintiff in response to her complaints of back pain. On examination, the Plaintiff had negative straight leg raising, full muscle strength, and intact sensation, but had some moderate back tightness and tenderness. Dr. Stewart prescribed a TENS unit.

On May 24, 2001, the Plaintiff complained of an exacerbation of her back pain to Dr. Miller, and he changed her medication regimen. Dr. Miller noted that the Plaintiff's lumbar posture was "slightly forward flexed." R. at 376.

On May 26, 2001, the Plaintiff sought emergency room treatment for complaints of back pain. She was given medication and instructed to follow-up with her regular physician.

On July 18, 2001, Dr. Anthony Anigbo, a neurosurgeon, examined the Plaintiff in response to her complaints of back pain and of her legs giving out. The Plaintiff's physical examination

findings showed mild tenderness and "questionable" paraspinal spasm.  He noted that an MRI showed some dessication of a disc and a small disc herniation.  However, he concluded those findings did not explain her symptoms.  He ordered an electromyogram (EMG) and nerve conduction studies, to be followed by Total Myelogram if the results were normal.  On August 17, 2001, Dr. Anigbo noted that the EMG and nerve conduction studies were essentially negative.  He suggested Lumbar Myelography with CT.  He told the Plaintiff that if the results of that testing were negative, "she has no satisfactory diagnosis for her problem."  R. at 274.

On February 18, 2002, the Plaintiff returned to Dr. Anigbo to have her myelogram performed. The myelogram was "unremarkable."  Dr. Anigbo noted that the Plaintiff's back pain had returned full-blown and radiated down both legs into the calves.  A post myelogram CT scan of the lumbar spine showed disc bulging with no significant nerve root compression.

On March 15, 2002, Dr. Anigbo reviewed the Plaintiff's diagnostic tests including the myelogram results which showed disc bulging.  He concluded that her tests only showed mild arthritic changes and did not account for her pain complaints.  Dr. Anigbo proffered that the Plaintiff's pain could be related to muscle spasms, but this was "vague" and "nonspecific."[2]  He concluded that he had no treatment to offer her and discharged her from his care.

On September 17, 2002, Dr. M. Zeitouri examined the Plaintiff  in connection with her disability claim. Physical examination revealed that the Plaintiff could heel and toe walk with mild difficulty, tandem walk, get on and off the examination table, and stoop, but she could not fully squat.  The Plaintiff had a slow limping gait due to lower back pain.  Further, she had restriction in

---

[2] The medical term "non-specific" refers to pain that cannot be specifically related to a particular disease, but could be "the result of any one of several different conditions."  *Sarachet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

back motion and positive straight leg raising at forty-five degrees. The Plaintiff had no neurological abnormalities.

On November 12, 2002, Dr. Wenzler reviewed the file for the state agency and concluded that the Plaintiff could occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; stand and walk for about six hours in an eight hour workday; sit for six hours in an eight hour workday; and occasionally perform postural activities including climbing, balancing, stopping, kneeling, crouching, and crawling. Dr. Wenzler concluded that the Plaintiff's pain complaints were disproportionate to the clinical findings. Dr. Sands also reviewed the file for the state agency and concurred with Dr. Wenzler's findings.

On May 16, 2003, Dr. Larry Brazley, a rheumatologist, examined the Plaintiff upon referral from the Plaintiff's attorney. Physical examination revealed that the Plaintiff's gait was normal, and that she could heel and toe walk. She had limitation in back motion and tenderness, but no spasms, negative straight leg raising, and intact sensation. He indicated that he reviewed a MRI scan that showed a disk herniation or protrusion. Dr. Brazley stated that the Plaintiff's chronic low back pain is of multiple etiologies primarily soft tissue. He recommended medication and yoga.

On May 19, 2003, Dr. Levin performed a neurological examination of the Plaintiff and found a diminished range of motion of the lumbosacral spine in all directions. He prescribed medication and suggested an updated MRI scan. The MRI scan showed mild degenerative disc disease.

### C. Testimony of the Plaintiff and Reports to the Agency

In August 2002, the Plaintiff reported to the Agency that she cooks, performs lighter household chores, drives short distances, and reads. The Plaintiff's mother reported that the Plaintiff cooks, does laundry, drives, performs lawn work, reads, performs house cleaning, takes care of

children to earn money, uses the computer, goes grocery shopping, and attends church. The Plaintiff's mother also indicated that the Plaintiff does not have difficulty interacting with others, handles criticism fine, and does not need assistance with remembering schedules.

At her hearing, the Plaintiff stated that her activities include cooking, reading, watching television, working on puzzles, and occasionally going grocery shopping and attending church. The Plaintiff estimated that she could sit for about thirty minutes, stand for ten minutes, and lift a gallon of milk. The Plaintiff stated that she wore her back brace daily and also took medication. The Plaintiff testified that she has difficulty climbing stairs and "stays off stairs as much as possible." R. at 435. The Plaintiff's back problems restrict her from driving a motor vehicle because she experiences muscle spasms; therefore she drives only when circumstances force her to. For example, in a typical week she drives two or three times only if she "ha[s] to take her son" out or if she has to go to the grocery store. The Plaintiff testified that she experiences back muscle spasms that radiate to her legs and have caused her to lose balance and fall on more than one occasion. On one such occasion she fell on her arm and injured her shoulder requiring her to visit an emergency room. Her back pain flares up as frequently as twice a month and for relief she visits doctors, takes bed rest "in a fetal position," uses a hot pad and/or takes hot baths. The Plaintiff testified that the medications she takes make her sleepy.

### D. Testimony of the Medical Expert

At Plaintiff's administrative hearing, Dr. Ashok Jilhewar testified regarding the Plaintiff's back condition. Dr. Jilhewar testified that it did not meet or equal any listed impairment. Dr. Jilhewar concluded that the Plaintiff had the functional capacity to perform sedentary work. Specifically, Dr. Jilhewar stated that the Plaintiff could occasionally lift ten pounds, frequently lift

8

eight pounds, sit for six hours in an eight hour workday, and stand for two hours. Dr. Jilhewar noted that the Plaintiff would need a sit/stand option after fifteen minutes of standing. The Plaintiff could occasionally bend, but could not kneel, crawl, or climb ladders or ropes or work at unprotected heights. Dr. Jilhewar opined that the objective findings did not support the Plaintiff's testimony as to the level of severity of her pain.

### E. Testimony of the Vocational Expert

At the Plaintiff's administrative hearing, the ALJ asked the Dr. Irvin J. Roth, the vocational expert (VE), to assume a hypothetical individual who could perform simple and routine tasks with physical limitations corresponding to the testimony of the medical expert. The VE testified that such an individual could not perform Plaintiff's past work. However, the VE identified other jobs including cashier (2,000 jobs); bench worker (5,000 jobs); inspector (1,200 jobs); and packer (1,500 jobs). The VE subsequently struck the cashier job as requiring more than simple and routine tasks. The VE testified that if the Plaintiff had to rest periodically throughout the day due to severe pain, she could not perform any jobs existing in significant numbers.

### F. The ALJ's Decision

After considering the evidence, the ALJ conducted the five-step analysis set forth at 20 CFR § 404.1520. At step one, the ALJ concluded that the Plaintiff was not performing substantial gainful activity since her alleged onset date. At step two, the ALJ found that based on the medical evidence, including the Plaintiff's discogenic and degenerative disorders of the back, she has impairments that are severe. However, at step three, these same impairments were determined to not be severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P,

Regulations No. 4.  Specifically, Plaintiff does not have a significant difficulty ambulating of the degree necessary to meet the listing requirements.

At step four, the ALJ determined whether the Plaintiff can perform "past relevant work," which is defined in the Regulations at 20 CFR §404.1565.  The ALJ states that, "In making this assessment, the undersigned has considered the claimant's subjective allegations, all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ."  R. at 23.  The ALJ stated that while he found the claimant generally credible, he was not convinced that she could not do the range of sedentary work recommended by the Medical Expert (ME).  Based on the VE's testimony, the ALJ found that Plaintiff is unable to perform the requirements of any of her past relevant work because it requires activities excluded by her RFC; however, the ALJ concluded that the evidence supports a finding that the claimant retains the maximum residual functional capacity for sedentary exertion.

Therefore, at step five, because the Plaintiff cannot perform her past relevant work, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the Plaintiff can perform, consistent with her RFC, age, education, and work experience.   The ALJ determined that the Plaintiff could not return to the work she performed in the past, but that the medical evidence did not establish that the Plaintiff could not do other types of work.  Based upon the VE's testimony and the Plaintiff's age, education, past work experience, and RFC, the ALJ determined that the Plaintiff could perform a significant range of sedentary work as defined in 20 CFR §§ 404.15697 and 416.967.  Specifically, the ALJ determined, after considering the VE's testimony and factors listed above, that the Plaintiff could perform sedentary, unskilled work as a bench worker (5,000 regionally available jobs), as a packer (1,500 regionally available jobs), and as an inspector (1,200 regionally available jobs).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will only reverse if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford*, 227 F.3d at 869; *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**DISABILITY STANDARD**

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A); 20 C.F.R. §§ 404.1520(e), (f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4). The Seventh Circuit has summarized the sequence as follows:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past relevant work; and (5) whether the claimant is capable of performing work in the national economy. Under the five-part sequential evaluation process, "[a]n affirmative answer leads either to the next step, or, on Step 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.

*Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001) (citations omitted) (alterations in original); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)-(iv); *Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004). At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's RFC. "The RFC is an assessment of what work-related activities the claimant can perform despite [his]

12

limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, *see Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995), whereas the burden at step five is on the ALJ, *see Zurawski*, 245 F.3d at 886.

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*, 245 F.3d at 888. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995 (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**ANALYSIS**

The Plaintiff argues that the ALJ's credibility determination contains an error of law because it is not supported by substantial evidence. Specifically, the Plaintiff alleges that the ALJ's credibility finding that the Plaintiff's pain is not disabling is not supported by substantial evidence. In response, the Commissioner asserts that substantial evidence supports the ALJ's finding that Plaintiff's complaints of debility were not fully credible and that she could perform a range of sedentary work.

13

Social Security regulations provide that, in making a disability determination, the Commissioner will consider a claimant's statements about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. 20 C.F.R. § 404.1529(a). The Social Security regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a), (c); *see Pope v. Shalala*, 998 F.2d 473, 482 (7th Cir. 1993).

The ALJ must weigh the claimant's subjective complaints and the relevant objective medical evidence, as well as any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making the credibility determination, Social Security Ruling 96-7p dictates that the ALJ "must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p at *1.

14

The Ruling provides that the "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p; *see Steele v. Barnhart*, 290 F.3d 396, 942 (7th Cir. 2002); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Moreover, an ALJ is not required to give full credit to every statement of pain or to find a disability every time a claimant states that he or she is unable to work. *Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence.'" SSR 96-7p at *6.

"[T]he adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements." SSR 96-7p. As the Seventh Circuit has stated, "because hearing officers are in the best position to see and hear the witnesses and assess their forthrightness, we afford their credibility determinations special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (internal quotations and citations omitted). Generally, an ALJ's credibility determination will not be overturned unless it was "patently wrong." *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003).

"[B]ecause the ALJ is in a considerably better position than [the] reviewing court to assess a claimant's credibility, an ALJ's credibility finding commands deference and will not be overturned unless it was patently wrong." *Powers*, 207 F.3d at 435 (7th Cir. 2000). Hence, the ALJ's credibility determination is entitled to considerable weight and often such determinations involve "intangible and unarticulable elements which impress the ALJ, that, unfortunately leave 'no trace that can be discerned in this or any other transcript.'" *Kelley v. Sullivan*, 890 F.2d 961, 964 (7th Cir. 1989)

(citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986)).  Reviewing courts will generally affirm the ALJ's credibility determinations so long as the ALJ's reasons are supported by the record.  *See Zurawski*, 245 F.3d at 887.

The Plaintiff first alleges that the ALJ ignored medical evidence in the record and ignored the Plaintiff's testimony and instead narrowly relied on the medical expert's testimony at the hearing in determining that "with proper motivation the claimant can do" simple unskilled work such as a bench worker, a packer and/or an inspector.  R. at 23, 24.  The Plaintiff also alleges that the medical expert based his RFC finding solely on Dr. Levin's consultative examination and ignored other medical records.

In his decision, the ALJ discussed that medical expert Dr. Jilhewar's opinion appeared consistent with the record as a whole and was supported by the clinical and diagnostic findings.  A review of the record by the Court also shows that Dr. Jilhewar considered all of the medical reports in reaching his conclusion, relying not just on one medical report as the Plaintiff contends.  In addition, the ALJ discussed that the state agency physicians found that the Plaintiff could perform a range of light work, which exceeds the demands of sedentary work.  The ALJ also considered and found that the Plaintiff's clinical and diagnostic findings did not support her contention of debilitating pain.  When tests, including an EMG, nerve conduction studies, and a lumbar myelogram showed only mild arthritic changes, Dr. Anigbo, whom the Plaintiff refers to as a treating physician, concluded that none of the clinical or diagnostic findings accounted for the Plaintiff's pain complaints.  The ALJ specifically cited this statement as highly probative.   In addition to considering opinion evidence and clinical findings, the ALJ also considered the other evidence of record before finding the Plaintiff's complaints of debility not fully credible.  The ALJ noted that  physicians repeatedly advised only conservative treatment for the Plaintiff, such as

16

medication and yoga. The regulations permit the ALJ to consider such treatments in his determination. *See* 20 C.F.R. § 404.1529(c)(3)(v) (in assessing credibility, the ALJ may consider the treatment, other than medication, received by the claimant.). The ALJ also considered the Plaintiff's activities, which include doing household chores with some assistance, driving short distances, and attending church in his decision.

Next, the Plaintiff claims that the ALJ failed to articulate his analysis for finding that the Plaintiff could perform simple unskilled work such as a bench worker, a packer and/or an inspector. As previously discussed, an ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott*, 297 F.3d at 595. The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski*, 245 F.3d at 888. The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young*, 362 F.3d at 995. The Court finds that by discussing the physician opinion evidence, the minimal clinical and diagnostic findings, the conservative treatment, and other record inconsistencies, the ALJ adequately articulated his reasons for rejecting the Plaintiff's claims of wholly debilitating pain.

The Plaintiff also alleges that the ALJ's decision is deficient because of contradictory assertions. The Plaintiff first references the finding by the ALJ, which states, "The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision." R. at 25. The Plaintiff then points to the ALJ's statement that, "On the whole I did [find the] claimant generally credible." R. at 23. The Plaintiff also references

the ALJ's observation that the Plaintiff "appeared in some discomfort at the hearing." *Id.* The Court finds that a complete reading of the decision evidences that the ALJ likely found the Plaintiff credible only to the extent that she was unable to perform more than sedentary work. The ALJ credited a large part of the Plaintiff's testimony, along with his observation of her apparent discomfort, by imposing a restriction to a range of sedentary work. However, it appears that given the record as a whole, the ALJ found the Plaintiff's contention of an inability to perform any work not credible. The Court finds that the ALJ's statements and findings are supported by the record and are not contradictory.

Lastly, the Plaintiff contends that the ALJ is "playing doctor" by asserting that, "on the whole I believe that with proper motivation claimant can do all the work identified by the vocational expert." R. at 23. The Plaintiff alleges that the ALJ's assertion does not rest on any medical opinion of a treating physician, but rather rests on the "medical opinion" of the ALJ himself. The ALJ should not "play doctor" by making "independent medical findings" but instead should base all findings on the objective medical evidence. *See Latkowski v. Barnhart*, 93 Fed. Appx. 963, 972 (7th Cir. 2004) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)). However, upon review of the ALJ's decision, the Court finds that the ALJ adopted the opinion of the testifying medical expert and therefore the ALJ's assertion regarding the Plaintiff's abilities is supported by the record.

## CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's credibility determination was

supported by substantial evidence. Therefore, the Court **DENIES** the Social Security Opening Brief of Plaintiff [DE 15]. The Court **REAFFIRMS** the ALJ's decision in all respects.

SO ORDERED this 31st day of March, 2006.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE CHERRY<br>
UNITED STATES DISTRICT COURT

cc:     All counsel of record